

FILED

2015 Mar-24  PM 03:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **MARY A. KIMBRELL,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case Number 2:13-cv-1515-SLB** |
| | ) | |
| **CAROLYN W. COLVIN, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Mary A. Kimbrell brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for supplemental security income ["SSI"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

## I. PROCEDURAL HISTORY

On February 23, 2010, plaintiff filed an application for SSI, alleging a disability onset date of January 1, 1997, which plaintiff later amended to February 16, 2010. (R. 166, 183.)[1] This application was denied on July 27, 2010 by the Social Security Administration ["SSA"], (R. 98), and plaintiff subsequently requested a hearing before an Administrative Law Judge

---

[1] Reference to a document number, ("Doc.___"), refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ("R.___").

["ALJ"], which was held on December 8, 2011, (R. 62). After the hearing, the ALJ found that plaintiff was capable of making a vocational adjustment to other occupations, such as maid/cleaner, hand packer, and laundry worker, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 48-49.) In light of these findings, the ALJ denied plaintiff's request for SSI on December 28, 2011. (R. 49.)

Plaintiff petitioned the Appeals Council to review the ALJ's decision, and on May 11, 2013, the Appeals Council denied plaintiff's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner of Social Security. (R. 1.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on August 16, 2013. (Doc. 1.)

## II. <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)) (internal quotations and other citation omitted). "The Commissioner's factual findings are conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*, 894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936 F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III. DISCUSSION

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation to determine whether a claimant is eligible for DIB or SSI.[2] *See* 20 C.F.R. § 404.1520(a)(1)-

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set order. . . . If we can find that you are disabled or not disabled at a step, we make our determination or decision and do not go on to the next step. If we cannot find that you are disabled or not disabled at a step, we go on to the next step. Before we go from step three to step four, we assess your residual functional capacity. . . . We use this residual functional capacity assessment at both step four and step five when we evaluate your claim at these steps.

20 C.F.R. § 404.1520(a)(4).

(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not

---

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since February 16, 2010, the alleged onset date. (R. 36.) While the ALJ noted that plaintiff previously and currently worked up to twenty hours a week as a home health provider, the ALJ found that plaintiff's work activity did not rise to the level of substantial gainful activity, considering plaintiff's posted earnings and the record as a whole. (*Id.*)

### 2. Severe Impairments

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations

---

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*."  11th Cir. R. 36-2 (emphasis added).

provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find that you do not have a severe impairment and are, therefore, not disabled. We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

_____

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had severe impairments of "osteoarthritis, diabetes, post-traumatic stress disorder, major depressive disorder, panic disorder with agoraphobia, and obesity." (R. 36.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. App'x. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 36.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner

"will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff has a limited education and was 54 years old, which is defined as an individual closely approaching advanced age, on the alleged onset date. (R. 48.) The ALJ also found that plaintiff was unable to perform any past relevant work. (R. 47.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . except she can never climb ladders, ropes, or scaffolds. She can occasionally bend. She can frequently climb ramps, climb stairs, balance, stoop, kneel, crouch, and crawl. The claimant is limited to one- and two-step tasks in a low stress job with only occasional decision making required, only occasional changes in the work setting, and no strict production rate requirements. She is limited to only occasional interaction with the public.

(R. 38.)

8

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R. § 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work. We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of maid/cleaner, hand packer, and laundry worker, which are jobs that exist in significant numbers in Alabama and in the national economy. (R. 90.) Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (R. 49.)

9

**B. MS. KIMBRELL'S CLAIMS**

Plaintiff argues that (1) the ALJ erred in discrediting plaintiff's complaints of pain, (2) the ALJ erroneously relied on VE testimony that conflicted with plaintiff's RFC assessment to find that plaintiff could perform other work in the national economy, and (3) even if the court affirms the ALJ's RFC findings, the court should remand for a determination of plaintiff's proper age category at the time of the ALJ decision. (Doc. 10 at 11, 16.) Upon reviewing the record and the parties' briefs, the court finds that the Commissioner's decision is due to be affirmed.

**1. Credibility Determination**

Plaintiff argues that the ALJ did not rely on substantial evidence in discrediting her complaints of pain. (Doc. 10 at 16.) Social Security Ruling 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow[6]: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce

---

[6]

Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p. The ALJ found that, under step one, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but under step two, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 40.)

First, plaintiff argues that the ALJ improperly relied on plaintiff's failure to follow her prescribed treatment. (Doc. 10 at 19.) Specifically, plaintiff argues that the ALJ could not rely on plaintiff's failure to follow prescribed treatment to determine that plaintiff was not disabled without "evidence from a treating source that such treatment would restore [plaintiff's] ability to work." (Doc. 10 at 21.) The Commissioner may rely on a claimant's failure to follow prescribed treatment only if the following requirements are met:

> 1. The evidence establishes that the individual's impairment precludes engaging in any substantial gainful activity (SGA) . . . ; and

2. The impairment has lasted or is expected to last for 12 continuous months from onset of disability or is expected to result in death; and

3. Treatment which is clearly expected to restore capacity to engage in any SGA . . . has been prescribed by a treating source; and

4. The evidence of record discloses that there has been refusal to follow prescribed treatment.

Where SSA makes a determination of "failure," a determination must also be made as to whether or not failure to follow prescribed treatment is justifiable.

SSR 82-59; *see also Lucas v. Sullivan*, 918 F.2d 1567, 1572 (11th Cir. 1990) ("[T]he Secretary may not deny SSI disability benefits on the basis of noncompliance with treatment unless it is shown that compliance would restore the claimant's ability to work . . . ."). Contrary to defendant's argument, the ALJ did not properly consider plaintiff's noncompliance with her prescribed mental health treatment. The ALJ stated:

To obtain disability benefits, a claimant must follow treatment prescribed if that treatment would restore the claimant's ability to work. If the claimant does not follow prescribed treatment without a good reason, the claimant will not be found disabled. The regulations do not list financial inability to pay for treatment as an acceptable excuse for failing to follow prescribed treatment. (20 C.F.R. § 404.1530, 416.930). The claimant is also able to afford cigarettes. She has continuously worked and earned some income.

(R. 44.) The ALJ erred in relying on plaintiff's noncompliance because the ALJ did not determine that plaintiff was under a disability or that compliance would restore plaintiff's ability to work. The court agrees with defendant that the ALJ "considered [p]laintiff's noncompliance only as evidence undermining [p]laintiff's credibility." (*See* Doc. 11 at 8.) However, an ALJ is not permitted to rely on a claimant's noncompliance for this reason. *See*

*Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("In order to deny benefits on the ground of failure to follow prescribed treatment, the ALJ *must* find that had the claimant followed the prescribed treatment, the claimant's ability to work would have been restored.") (emphasis added).

Therefore, plaintiff's argument on this point is meritorious. Nevertheless, because the ALJ did not primarily base her disability determination on plaintiff's noncompliance and additionally relied on substantial evidence in assessing plaintiff's credibility, the court will not remand for a correction of the ALJ's error. *See Mack v. Comm'r of Soc. Sec.*, 420 F. App'x 881, 883 (11th Cir. 2011) ("Because (1) the ALJ did not significantly base his determination that Mack was not disabled on her noncompliance with prescribed treatment; and (2) there is no dispute that substantial evidence supports the ALJ's credibility finding, the ALJ's assessment of both the medical evidence and Mack's RFC, and the VE's testimony . . . , we affirm.").

Plaintiff next contests the ALJ's reliance on plaintiff's conservative treatment history and hearing testimony. The ALJ found that:

> [t]he claimant has not generally received the type of medical treatment one would expect for a totally disabled individual. The bulk of the records reveal that she was treated for routine medical issues and not with the frequency one would expect considering the allegedly disabling nature of her impairments. Her physical treatment has been essentially routine and/or conservative in nature, consisting only of medications. She never sought or received treatment from a specialist such as a rheumatologist or pain management doctor; all treatment has been rendered by a general practitioner. Treatment notes indicate medication has been generally successful in controlling her symptoms.

13

(R. 44.) The ALJ also noted that:

> [plaintiff's] description of the severity of her pain has been so extreme as to appear implausible. Treatment notes do not describe pain or physical examination findings consistent with the claimant's allegation she could only stand about fifteen to twenty minutes, sit about thirty minutes, or walk four to five feet. In fact she only described her pain as a 4 on a scale of 1-10.

(R. 47.)

Plaintiff argues that, contrary to the ALJ's determination, plaintiff stated she could walk a block before her knees and hips hurt, rather than only four or five feet, and the court agrees. At the hearing, plaintiff stated that she walked four to five feet from her car to the front steps of the residence where plaintiff provided home health care. (R. 72-73.) She did not indicate that four or five feet was the maximum distance she could walk, and she had previously stated in a Function Report that she could walk a block before she was in pain. (*See id.*; R. 197.) Despite this error, the ALJ relied on substantial evidence in finding that plaintiff's impairments were not as limiting as alleged.

Treatment notes from March 19, 2010 showed that plaintiff's diabetes and hyperlipidemia were at the "goal" level and that the doctor treated plaintiff through prescription medication. (R. 302.) Physicians at the Good Samaritan Health Clinic repeatedly treated plaintiff with medication, and on November 29, 2011, plaintiff stated that the medications helped with her pain. (R. 358, 362, 363, 457.)  She also indicated on March 10, 2010 that the medications Seroquel and Lexapro helped stabilize her psychiatric impairments, (R. 309), and on February 3, 2011, plaintiff appeared "elated" at her therapy session and

14

stated she felt Klonopin was helping her, (R. 396). Additionally, the ALJ noted that the treating notes in the record do not contain any restrictions on plaintiff. (R. 45.) While the record does show that plaintiff sought treatment for both her physical and mental impairments with regularity, plaintiff's treatment regime consisting primarily of medication, which appears to have alleviated plaintiff's pain, supports the ALJ's conclusion that plaintiff's impairments were not as limiting as alleged.

Plaintiff also challenges the ALJ's finding that the limited nature of plaintiff's activities could not be attributed to plaintiff's medical impairments, as opposed to other reasons, and could not be objectively verified. (Doc. 10 at 17.) While the ALJ did not support this finding with specific evidence from the record, the ALJ made additional findings regarding plaintiff's daily activities, stating that plaintiff did not limit her daily activities "to the extent one would expect, given the complaints of disabling symptoms and limitations." (R. 46.) The ALJ relied on plaintiff's testimony that she shopped for groceries about once or twice a week, prepared small meals for herself, and drove herself around. (R. 46, 73, 195.) Plaintiff also reported that she completed her daily activities without assistance, attended church, and visited with two of her neighbors. (R. 311.)

Additionally, in 2010, plaintiff worked part-time as a care provider for two disabled Veterans Affairs clients. (R. 193.) She helped the men maintain hygiene and helped one man move from his wheelchair to the bed if he could not stand. (*Id.*) She was fired in early 2011. (R. 65.) Although plaintiff stated that she no longer wanted to work as a caregiver, she

reported working as a care provider for a woman in a wheelchair in June 2011, a few months after she was fired from her previous job, and plaintiff maintained this job until at least October 2011. (R. 386, 393, 447.) The ALJ noted that plaintiff's ability to work as a care provider "at that time strongly suggests that [plaintiff's impairments] would not currently prevent work." (R. 47.) Plaintiff's activities of daily living support a finding that her complaints of pain are not fully credible.

Lastly, plaintiff challenges the ALJ's finding that the objective medical evidence did not support plaintiff's contention that her pain prevented her from working. Plaintiff argues that an x-ray of plaintiff's lumbar spine revealed that plaintiff's spine lacks a normal lordotic curvature and that this impairment, known as flat back syndrome,[7] "can reasonably be expected to produce pain."[8] (Doc. 10 at 22-23.) Plaintiff is correct that medical literature on lumbar "flat back syndrome" supports her argument that plaintiff's impairment could reasonably cause plaintiff pain. (*Id.*) However, defendant is also correct that "the finding that an impairment could reasonably be expected to produce pain does not involve a determination as to the intensity, persistence, or functionally limiting effects of the symptoms." (Doc. 11 at 10.) The ALJ discredited plaintiff's complaints about the limiting effects of her pain because, in addition to plaintiff's daily activities suggesting a greater

---

[7]  "Flat back syndrome refers to a loss of normal lumbar lordosis or swayback appearance." (Doc. 10 at 23 (quoting *Lumbar Flat Back Syndrome*, VIRGINIA SPINE INSTITUTE).)

[8]  Plaintiff attached two medical articles discussing flat back syndrome as exhibits to supplement her argument.

ability than that alleged by plaintiff, an x-ray of plaintiff's lumbar spine revealed that, while normal lordotic curvature of the lumbar spine was not present, only mild arthritic changes were noted. (R. 45, 338.) Dr. Bharat Vakharia also found that movement of plaintiff's cervical spine was near normal and that plaintiff's gait was normal. (R. 334.)

Regarding plaintiff's complaints of pain in her hands, a medical examination by Dr. Vakharia showed that plaintiff has 4/5 grip strength in both hands and, although Dr. Vakharia found evidence of osteoarthritis in plaintiff's DIP joints, there were no signs of "muscle wasting" in plaintiff's hands. (R. 41, 334.) The medical evidence of record also did not support plaintiff's complaints of hip pain. Dr. Vakharia found that plaintiff's hip movements were "minimally limited and painful," (R. 334), and an x-ray of plaintiff's right hip joint "revealed interarticular joint space is normal[, and] [b]ony structure is normal. There is no evidence of fracture or dislocation. There is no significant degenerative arthritic changes noted," (R. 338). The court finds that substantial evidence supports the ALJ's credibility determination.

## 2. Vocational Expert Testimony

Plaintiff next contends that two of the three jobs the VE testified that plaintiff could perform require a reasoning level of two, which exceeds plaintiff's RFC limiting her to "one-and two-step tasks." (Doc. 10 at 13-14.)

> [A]t step five of the sequential evaluation process, the Commissioner has the burden of proving that the plaintiff is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age,

education, and work history. *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). An ALJ may make this determination by relying on the testimony of a VE. *Leigh v. Commissioner of Social Security*, 496 Fed. App'x 973 (11th Cir. 2012) (per curiam) (citing *Jones v. Apel*, 190 F.3d 1224, 1230 (11th Cir. 1999)). For a VE's testimony to constitute substantial evidence, the ALJ must pose a hypothetical question that comprises all of the plaintiff's impairments. *Id.*, 496 Fed. App'x 973, 190 F.3d at 1229. If there is a conflict between the [Dictionary of Occupational Titles ("DOT")] and the jobs identified by the VE, the VE trumps the DOT because the DOT is not the sole source of admissible information concerning jobs. *Id.*; *Robinson v. Astrue*, 2011 U.S. Dist. LEXIS 68974, (M.D. Ala. June 27, 2011) (citing *Jones v. Apfel*, *supra*); Social Security Ruling 00–4p, 2000 SSR LEXIS 8.

*Morgan v. Colvin*, Civil Action No. 12-00204-B, 2013 WL 5445690, at *6 (S.D. Ala. Sept. 30, 2013). Further, Social Security Ruling 00-4p requires an ALJ to affirmatively ask the VE whether a conflict exists between the VE's testimony and the DOT.

The ALJ's RFC assessment limited plaintiff to "one- and two-step tasks," which plaintiff argues should limit her to only jobs requiring a reasoning level of one, defined as "[applying] commonsense understanding to carry out simple one- or two-step instructions [and dealing] with standardized situations with occasional or no variables in or from these situations encountered on the job." *See* 1991 WL 672783. The VE testified that, given plaintiff's age, education, work experience, and RFC, including plaintiff's limitation to one- and two-step jobs, plaintiff could perform the jobs of maid/cleaner (DOT 323.687-014), hand packer (DOT 920.686-083), and laundry worker (DOT 361.687-014). (R. 90.) The jobs of hand packer and laundry worker require a reasoning level of two, which entails "[applying] commonsense understanding to carry out detailed but uninvolved written or oral instructions [and dealing] with problems involving a few concrete variables in or from standardized

18

situations." *See* 1991 WL 687959; 1991 WL 672991. Before relying on the VE's testimony regarding the jobs plaintiff could perform, the ALJ asked the VE if his testimony was consistent with the DOT, and the VE responded that there was no conflict. (R. 95.)

First, the court finds that no conflict exists between plaintiff's RFC limiting her to one- and two-step tasks and the VE's testimony that plaintiff is capable of performing jobs requiring a reasoning level of two. "Most courts which have addressed this issue have held that the requirement of Reasoning Level 2 or 3 is not inconsistent with the ability to perform only simple tasks." *Riddle v. Colvin*, Civil Action No. 1:12-cv-787-WC, 2013 WL 6772419, at *6 (M.D. Ala. Dec. 20, 2013) (citations and internal quotations omitted); *see also Campbell v. Colvin*, Civil Action No. 12-00656-B, 2014 WL 1315600, at *12 (S.D. Ala. Mar. 28, 2014) (finding that the plaintiff failed to show a conflict between her RFC limitation of "very short and simple instructions" and the VE's testimony that plaintiff could perform jobs requiring level two reasoning, "given that the level two reasoning requirement of these jobs is consistent with carrying out simple, one and two step tasks and instructions"); *George v. Astrue*, Civil Action No. 10-00113-B, 2011 WL 4550131, at *5 (S.D. Ala. Sept. 30, 2011) (holding that plaintiff's RFC limiting him "to carrying out simple one and two step tasks and instructions" did not conflict with the VE's testimony that plaintiff could perform a job requiring a reasoning level of two).

However, even assuming a conflict exists, the ALJ fulfilled her duty under SSR 00-4p by asking the VE if his testimony was consistent with the DOT. When the VE responded that it was, the ALJ was entitled to rely on the VE's testimony. *See* SSR 00-4p; *see also Leigh v. Comm'r of Soc. Sec.*, 496 F. App'x 973, 975 (11th Cir. 2012) (rejecting an argument that the ALJ erroneously relied on the VE's testimony, where the ALJ inquired about any inconsistencies between the VE's opinion and the DOT, and the plaintiff did not offer evidence controverting the VE's testimony). Furthermore, "SSR 00-4p requires only that the ALJ resolve an 'apparent unresolved conflict.'" *Campbell*, 2014 WL 1315600, at *13. Because the VE responded that his testimony was consistent with the DOT and plaintiff did not offer evidence challenging the VE's opinion on the record, no "apparent unresolved conflict" existed for the ALJ to resolve. The court finds that the VE did not identify jobs beyond plaintiff's ability level and that, even if he did, the ALJ did not err in relying on the VE's testimony to find that plaintiff could perform other work in the national economy.

### 3. Remand for a Determination of Plaintiff's Age Category

Lastly, plaintiff argues that, even if the court affirms the ALJ's RFC determination, the court should remand this case for a determination of plaintiff's proper age category as of the date of the ALJ's decision. (Doc. 10 at 16.) At the time of the ALJ's decision, plaintiff was 54 years old, which is defined as a person closely approaching advanced age. (R. 48; *see* 20 C.F.R. § 416.963(d) (the category for "closely approaching advanced age" encompasses ages 50-54) .) According to plaintiff, the ALJ should have applied the Medical

Vocational Guidelines ("the Grids") Rule 202.06 for a claimant of advanced age because plaintiff was within six months of turning 55 years old[9] and, thereby, entering the advanced age category at the time of the ALJ's decision. (Doc. 10 at 15.)

The Eleventh Circuit has explained:

> [T]he Commissioner "may not apply the grids in a mechanistic fashion on the basis of a claimant's age, in order to establish conclusively a claimant's adaptability to a new work environment." [*Walker v. Bowen*, 826 F.2d 996, 1002 (11th Cir. 1987).] While the Commissioner may rely upon the claimant's age as evidence of adaptability to a new work environment, the claimant may then proffer "substantial credible evidence that his ability to adapt is less than the level established under the grids for persons his age." *Reeves v. Heckler*, 734 F.2d 519, 525 (11th Cir.1984). If the claimant presents such evidence, the Commissioner "cannot rely on the age factor of the grids and must instead establish the claimant's ability to adapt to a new work environment by independent evidence" and, thus, the district court would be required to remand the case to the Commissioner for reconsideration of the issue. *Id.*; *see also Patterson* [*v. Bowen*], 799 F.2d [1455,] 1458–59 [(11th Cir. 1986)]. "If, on the other hand, the claimant does not make such a proffer, the ALJ's mechanistic use of the age grids would be harmless error and there would be no need to remand to the [Commissioner]." *Patterson*, 799 F.2d at 1459.

*Miller v. Comm'r of Soc. Sec.*, 241 F. App'x 631, 634 (11th Cir. 2007); *see also* 20 C.F.R. § 416.963(b) ("If you are within a few days to a few months of reaching an older age category, and using the older age category would result in a determination or decision that you are disabled, we will consider whether to use the older age category after evaluating the overall impact of all the factors of your case."). To show that plaintiff's ability to adapt to

---

[9] Plaintiff turned 55 years old, defined as a person of advanced age, approximately three months after the ALJ's decision. (*See* R. 48-49.)

new work at the time of the ALJ decision was less than the ability level associated with individuals closely approaching advanced age, plaintiff proffers evidence that she had flat back syndrome, characterized by a lack of "normal lordotic curvature in her spine," and debilitating pain in her knees, hips, and hands, and that she could not sit longer than thirty minutes due to low back pain. (Doc. 13 at 3.)

First, the court finds that the ALJ did not rely solely on the Grids in deciding that plaintiff was not disabled, and thus, the ALJ was not required to determine in which age category plaintiff belonged. (*See* R. 48-49.)

> The ALJ should not rely exclusively on the grids when the claimant has a nonexertional impairment that significantly limits his basic work skills or the claimant cannot perform a full range of employment at the appropriate level of exertion. If nonexertional impairments exist, the ALJ may use the grids as a framework to evaluate vocational factors but also must introduce independent evidence, preferably through a vocational expert's testimony, of the existence of jobs in the national economy that the claimant can perform.

*Wolfe v. Chater*, 86 F.3d 1072, 1077-78 (11th Cir. 1996) (internal and other citations omitted). The ALJ found that, under the Grids, if plaintiff were capable of performing a full range of light work, the ALJ would be required to find plaintiff "not disabled." (R. 48.) However, the ALJ found that plaintiff's limitations impeded her ability to perform all or substantially all of the requirements of light work, so the ALJ used the Grids only as a framework and introduced VE testimony regarding plaintiff's ability to make a vocational adjustment to other work. (*Id.*) Relying on the VE testimony, the ALJ found that plaintiff was capable of making a vocational adjustment to other work that existed in significant numbers

22

in the national economy. (R. 49.) The ALJ properly relied on VE testimony that, given plaintiff's age, education, work experience, and RFC, plaintiff could perform three jobs that exist in significant numbers in Alabama and the national economy.

However, even assuming the ALJ relied exclusively on the Grids to make a disability determination, the ALJ correctly determined that plaintiff, who was 54 years old at the time of the ALJ's decision, was an individual closely approaching advanced age. To warrant remand, plaintiff must proffer evidence showing that her "ability to adapt was less than the level established under the grids for persons [her] age." *Miller*, 241 F. App'x at 636. Plaintiff proffered evidence that she had a lesser ability to adapt because of knee, hip, hand, and back pain and an inability to sit longer than thirty minutes. Plaintiff is right that age categories should not be mechanically applied, *see* 20 C.F.R. § 416.963(b), but as defendant points out, "simply because a claimant is close to an older age category does not mean that the claimant should be mechanically placed in the older age category." (Doc. 11 at 15.)  The court finds that substantial evidence supports the ALJ's finding that plaintiff's allegations of pain were not fully credible, and therefore, plaintiff's proffered evidence does not establish that her ability to adapt to new work was less than other individuals closely approaching advanced age. To the extent the ALJ relied on the Grids, any mechanistic application of the Grids was harmless error, and remand is not warranted.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for SSI is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this 24th day of March, 2015.


*Sharon Lovelace Blackburn*

SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE